The next case is number 2010-14-11 in Ray Klein. Mr. Tompkins.  My name is Louis Tompros, and together with Larissa Park, I represent Arnold Klein, who is the named inventor of the patent application on appeal and who is here in the courtroom today. Mr. Klein's invention is a new and elegant solution to the problem of mixing multiple different ratios of sugar and water to make different types of nectar for different species of birds and butterflies. In rejecting his application as obvious, the patent office was unable to identify even a single anticipatory reference. They did not rely on any prior art device for making nectar, on any bird or animal feeding device, on any food preparation device, or on any multiple ratio mixing device at all. Nor did the patent office rely on any combination of references. Instead, the patent office found five very old container patents and it made separate single reference obviousness rejections for each one, finding Mr. Klein's invention obvious in view of a wooden filing drawer, a sheet metal tool tray, a cabinet drawer, a blood plasma bottle, and a hair dye bottle. The board's analysis is wrong for two reasons. First, none of these references is analogous because none of them is addressed to the multiple ratio mixing problem that Mr. Klein's invention solved. In looking at this analogous art question, am I correct, the board relied simply on the prong of the analogous art tests that related to the question of whether something is reasonably pertinent to the problem addressed? That's correct, Your Honor. And that's the only prong that was referred to. That's correct. So then that gets us to the question of what's the problem addressed by the appellant. That's exactly right, Your Honor. And we don't have to guess what that problem was. Because we have the benefit of an express finding by the board as to what Mr. Klein's particular problem was. On page A9 of the appendix, the board made a finding that Mr. Klein's problem was, quote, making a nectar feeder with a movable divider to prepare different ratios of sugar and water for different animals. And we agree that that correctly states his problem. It was a multiple ratio mixing problem. Where we disagree with the board was that having made that finding, the board then came to the conclusion that all of the references are pertinent to that problem. There's no explanation in the board's opinion as to why that is. And in fact, the board's specific findings about the problems to which the references were addressed are not the same as its findings about Mr. Klein's problem. The five references fall into two groups. There are the solids and liquids. And we can treat them essentially together. Roberts, O'Connor, and Kirkman involve keeping solid things separate. Statement cards in a wooden accounting drawer, that's Roberts. Nuts and bolts in a tool tray, that's O'Connor. And then hardware, cosmetics, and paper clips in a cabinet, that's Kirkman. None of these references is about mixing two things together. In fact, the entire purpose of all of them is to keep these things separate. If I have a sheet metal tool tray of the O'Connor invention and my nuts and bolts mixed together, the tool tray has failed. Nor are Roberts, or O'Connor, or Kirkman directed to the problem of mixing sugar and water, another part of the problem as identified by the board. Or for that matter, any liquid solid mixture at all. One question, in your briefing you point to the first three references, the divider items. And you indicate that one problem there is that if one put water in, it would go from one side to the other. In other words, it wouldn't be contained in one section. Is that pertinent to the non-analogous art question, or is that more a non-obvious issue? I think it goes to both, Your Honor. The problem as found by the board was this multiple ratio mixing problem. So if you're trying to do what Mr. Klein is trying to do, that is have a container where you can put sugar on one side and water on the other. Keep them separate long enough to do what his invention is designed to do. Allow you to look line of sight and confirm that you have the right amount of water in one side and the right amount of sugar in the other side. Our view is it would not be analogous art when the containers, as soon as you pour the water in, immediately go into both compartments. The problem as identified by the board was a multiple ratio mixing problem. The divider has to allow for that mixing to happen by allowing the water to stay in the water side long enough to be able to establish the two different ratios. It also goes to obviousness. And there, it's even simpler. None of those references disclose the first limitation of his claim, a container adapted to receive water. But our view is it goes to both analogous art and obviousness. As to the liquids references, our view on those is that they are likewise non-analogous because they are not directed to the specific problem that the board identified. Again, the problem that they identified was a feeder with a movable divider to prepare different ratios for different animals. The liquids references, Greenspan and DeSanto, all have fixed dividers, not movable dividers. And as a result, they can prepare only one ratio of liquid to solid in the case of Greenspan or liquid to liquid in the case of DeSanto. Neither of those references is reasonably pertinent to the multiple ratio mixing problem identified by the board. One thing to bear in mind about these two different categories of references is that the board's rejections, not all of the references obviated all of the claims, even in the board's view. Specifically, it is only the solids references that the board found invalidated claim 30. So at the very least, even if the court were to conclude that one set is analogous and one is not, even before reaching the obviousness argument, we have some claims on which there must be a reversal. Claim 30 is the subordinate claim that uses the three different ratios. That's correct, Your Honor. You're saying that that is more likely to be invalidated than the claim from which it depends? No, Your Honor. That is less likely to be invalidated. The board only found claim 30 invalid in view of Roberts, O'Connor, and Kirkman. Those are the filing drawer, the tool tray, and the cabinet. Not in view of the two references that could, in theory, contain liquid. Because of that, if this court finds that the solids references are non-analogous, then claim 30 stands no matter what the finding is as to the liquids references. Turning to the question of obviousness itself, the board's decision on obviousness rests on two mistaken claim constructions. First, as to, again, the solids references, the board makes an error in construing the claim term adapted to receive water. What the board does is effectively reads the claim term entirely out of the claim by concluding that a device is adapted to receive water when it is capable of holding water, quote, even if only briefly. Now, what that would mean is that any device is adapted to receive water. A sieve will hold a drop of water in it briefly. This table will hold a drop of water on it before it rolls off onto the ground. The broadest reasonable construction of a claim term is not an improper or a wrong construction. It's the broadest reasonable construction. And under no reasonable construction of adapted to receive water does an object like the O'Connor tool tray that has holes, or an object like the Kirkman container where the divider has a slot at the bottom, under no reasonable construction can any of those be said to be adapted to receive water. There are similar claim construction errors in the board's obviousness analysis as to the two liquid references. Specifically, for both of those references, the board held that the movable divider limitation was satisfied. Now, the board gives no explanation of why that is. But all of those references, as the board itself concedes in its brief, have a fixed divider, a divider fixed in a specific location. Implicitly, if those references are found to disclose a movable divider, then the board must be construing removable to encompass the divider that is fixed in place. In the case of the DeSanto reference, the divider has this valve in it. And the valve can shift in position. And the water then flows through the valve. That's not a movable divider in the sense of the claims of the client patent, the client application. The divider is supposed to be able to move to establish different ratios of sugar and water for different animals. So let me ask you a question. There are basically two legs to the obviousness determination here. One, the references. And two, the determination that the application shows mixing ratios. Now, nobody's challenging that second determination. We're certainly not challenging the finding that the application discloses ratios. What I think we are challenging is if there's anything that's disclosing any kind of a reference that allows mixing. Just the ratios. The ratios are certainly disclosed. But assume for the moment one agrees with you that these prior art references are non-analogous art. That drops out one leg of the obviousness determination, right? I'm not sure that's right, Your Honor. I think that under this court's precedence, only analogous art, and in fact, under Graham versus John Deere only, analogous art can even be considered for the 103 analysis. That's what I'm saying. It would drop out. That art would no longer be there. That's correct. That would drop out. I say yes. Now, what would the result then be at that point? If this court were to make that ruling, that that art was non-analogous, do they then get the patent? Does he then get the patent? Or does it go back to the patent office? What happens? Is that the end of it? It's my understanding that these obviousness rejections would have to be reversed. And it would then go back to the board. Assume we were to reverse because we say it's not analogous art. Right. I think the case then does go back to the board. The board can then make further determinations as appropriate within the context of the board's procedural rules. I think that if these references are determined not to be analogous art by this court, the board could not rely on them in any way, in any combination or in any other way. Was there any other issue out there about this patent? There was not, Your Honor. I believe that I'm into my rebuttal time. We'll save your rebuttal time, Mr. Dunn, first. Thank you, Your Honor. We'll hear from Ms. Heber. May it please the court. First, I'd like to address the definition of the problem. The board decision cannot be read as saying this is a multiple ratio mixing problem. The problem hasn't changed. In their original decision, they defined it as a compartment separation problem. In the decision on the appeal, they narrowed it somewhat. But it's still the same definition of the problem. They acknowledged looking to a spec that you had to be able to accommodate the ratios. But what we're dealing with here is Klein knew the ratios. The ratios were known. He didn't come up with a new recipe for nectar. He didn't come up with the ratios. What he needed was a container that would accommodate the ratios to measure them out and then mix them. And that's exactly the way the board's defined the problem. It's the way we defined it in our brief. And that's what the problem is. The board seemed to make us an explicit finding on this at the bottom of page 8 of the board's opinion at appendix page A9. It says, in the instance case, the problem Klein addressed was not of making a nectar feeder, which is clearly in the prior art, but of making a nectar feeder with a movable divider to prepare different ratios of sugar and water for different animals. Yes. That's a finding, is it not, of what the problem is? It is, but they're not saying anything different than they've said all along. And all of the prior art references reasonably commend themselves to that problem. If you look at Greenspan, for example. I know the examiner made the argument that the references are not only relevant to the problem addressed, but also in the same general art or general field of sort of containers with dividers. But the board didn't go down that path and seemed to focus entirely on simply whether the references addressed the same problem. So aren't you stuck with that as a restriction under Chenery as to what the grounds are for us to review? Well, I think we're saying the same thing that the board said. We're not trying to change the problem. So we're focused on whether this is the same problem. Again, you seem to recognize the finding of the board as the problem here, but yet you seem to be arguing all kinds of different variations on that problem in terms of the problem being the same compartment separation problem or a problem with removable dividers. But that's not the problem. The problem is the problem that the board set forth in the opinion, correct? That's correct. But we think the only way to read what they set forth in the opinion is as one that effectively boils down to in its fundamental nature, how do I find a container that's going to accommodate my ratios? It's not about nectar, OK? And to the extent that on what basis are you saying that, well, they made an explicit finding, but yet the problem is not that explicit finding. It's the essence of that explicit finding in all of its broad nuances. That doesn't seem to me to be correct. Well, I think that we're talking about semantics here, honestly. And if we take what the board said, OK? That's at the center of a lot of path semantics. But if we take what the board said and even accepting that Klein wanted to simplify the mixing, well, that's exactly what, if we look at Greenspan, that's exactly what Greenspan does. It's exactly what DeSanto does. Greenspan was a blood plasma bottle. And what existed before he came up with his invention was a kit where you needed two different bottles, one with the dried plasma, one with water, and there was some complicated process whereby you had to extract the water from the bottle and it might not be sterile anymore. Well, he came up with a way, a divided container with separate compartments where the bottom compartment held the dried plasma, sealed that off, put water in the top, took the divider out, and they mixed. If we find that the board's definition of the problem, the board's finding of the problem, as explicitly set forth is the correct problem, then don't you have a problem with respect to all of these references? Because none of them addresses that specific or that explicit problem. So would you agree with me that if the problem is the problem as explicitly set forth with the opinion that the references all fail as analogous references? No, I can't agree with that. Because none of them, it seemed to me, disclose a movable divider to prepare different ratios of sugar and water for different animals. They do. They do? Again, we'll take green. Which one? I'll stick with Greenspan for a moment. The placement of that divider, as shown in Greenspan's embodiment, is fixed. But there's nothing that says someone of ordinary skill couldn't move it to accommodate the specific ratio the client wants to make. And I'd like to point out, claim 21 does not require that his container be able to make all three. It uses or. So it has to be able to make at least one according to those specified ratios. And what the board was saying was, yes, there's ratios here. And the container has to be able to make that using a movable divider. So I don't think that the art drops out. Well, claim 21 does say removal of the divider. Yes. So it has to be movable if you can remove it. Yes. And in all of the references, the dividers are removable. Yes. And so what we're talking about. Where is that in the references? In the references? The removable part? They're movable. That's different from removable in implementation of the purpose as set forth in the preamble. Well, at A502, for example, lines, I think it's 13 to 16, Greenspan talks about the plug is being removed from the opening. It's thereafter lifted from the bottom, and then you mix the contents. So the divider there is the plug. It's removed. In the organizer drawer references, anyone reading those references would understand, you take out the divider, the contents tends mixed. None of them have a fixed divider in the sense of, I can't take this thing out. I can't move it around. I can't adjust it. The drawer references are all adjustable, and the examiner explained how you could adjust them to meet client-specific ratios for each of the species. But isn't the problem a little different? Because the problem is that the divider is movable to accommodate or to accomplish different ratios. So it's not just that it's removable, but it's movable to accommodate different ratios. There's nothing to that effect in Greenspan, is there? There's nothing to suggest that the removal, even if you say that the divider is the plug that can be removed, that it's movable to accommodate different ratios. Well, again, I don't think that Claim 21 requires that, because it uses or. So it has to be able to be placed in a way that you can make the appropriate ratios of nectar for a hummingbird, for example, and then take it out in the contextual mix to make that nectar according to the established ratio. Or it would have to be placed in a way that you could make butterflies nectar and take it out. But then we have Claim 30, with which then, according to what you've just told us, would be distinguished. I'm not sure if I understand how it would be distinguished. Well, you keep telling us about Claim 21, which is broader. But there are a number of subordinate claims, the most specific of which does seem to be Claim 30, because it's specific to the three ratios, the three species. And we haven't seen anything in the prior art that puts all of this together or suggests putting it together, or I should say that's a question as to where in the prior art have we the foundation for the obviousness. Well, in Roberts, O'Connor, and Kirkman, that's what Claim 30 was rejected under, because those dividers can be placed in any of the combinations of these three in those containers. And that's why they were used to reject Claim 30. Now, so I don't think that Claim 30 is patentable. Those references clearly teach that all of those have multiple dividers that can be removed and placed according to the size of the compartment that you want to make. So you could place, and the examiner went through this in excruciating detail at one point in the prosecution trying to explain, hey, if I placed it in slot 4 and in slot 8, I would get the correct ratio to make your nectar. But Mr. Jompros makes the argument that, well, the dividers in those references are not intended to facilitate mixing. They're intended to keep things apart. Isn't that a valid distinction? I don't think so, Your Honor, because I think that mixing and separation are two sides of the same coin. Anyone reading those references, while admittedly their purpose was to keep them apart, but anyone reading those references would understand, if I take that divider out, the contents can mix. If I take the tool drawer, for example, if I have nuts in one side and ball bearings in the other, I take that divider out, they're going to mix. And so I don't think that that intended purpose in any way invalidates the obvious rejection or that art being used to find a claims container where you have the two substances and you take the divider out and they mix, it's doing exactly the same thing. So what about the point, though, that I think Mr. Jompros discussed, that if you put water into each of those three wooden things, I'm using the word thing, we know what we're talking about, the water will not stay in one side. It'll flow to the other side. Or there are holes that'll flow out. Well, I mean, for obviousness, we're talking about one of ordinary skill, not an automaton. And what would any of us do if something is leaking? We're going to seal it off. So maybe wood wouldn't commend itself to, or a metal drawer wouldn't commend itself to Klein's particular use. But plastic would. And you put a piece of tape or some other mechanism to stop the leaking. We try to stop the leaking. So in our view, that's just something that someone of ordinary skill would adapt that container to solve that particular issue. Isn't there a little hindsight in that thinking? I don't think so. I mean, even if you had a, let's say you had a. You have a toolbox intended to keep things separate, and it's made out of wood. And you're going to say, well, if you want, you could seal it up and use it to mix liquids. Seal it up, but you'd have to seal it in a way so you could take the divider out to mix. I mean, it seems to me there's an awful lot of hindsight there. Well, I'd like to take a step back for a second, because I think in this discussion, we're assuming that there's a sealing limitation in Mr. Klein's claims. And there's not. There is no sealing limitation here. So the board would. There is the limitation. I mean, isn't there inherently the limitation that you put the water on one side and the sugar on the other? And at that point, you don't want them to mix. You want the mixing to occur when you withdraw the divider. Yes, I mean, the Klein, the claim actually. I guess what I'm saying is whether you call it a sealing limitation or not, there is the inherent limitation, seems to me, that the two contents be kept separate. That may be possible to be read into it, but you've got to look at what the claim language says. All that it says is that the container itself, the big thing, has to be adapted to receive water. And then there's got to be a compartment that can receive sugar. So it doesn't say anything about these things can't mix or they have to stay separate for any period of time. There's no temporal limitation here at all. It does say we're in removal of the divider from the receiving means allows mixing. Yes. It certainly suggests, if not implies, that when the divider is in place, there is no mixing. That's one way to read it, but it doesn't prevent the fact that there could be some leakage that happens beforehand. It's just the removal is going to, whoosh, the things are going to come together and mix. Yes. I'd like to address just one other point. Actually, I don't want to address anything else. I think the other points that I wanted to make are adequately addressed in our brief. And unless the court has any questions on any other issues, I'll sit down. Thank you. Any questions? Any questions? OK. Thank you, Ms. Hewitt. Just one point, Your Honors. The Patent Office has focused on whether the distinction between what the board said Mr. Kline's purpose was, making a nectar feeder with a movable divider to prepare different ratios of sugar and water for different animals, and what, on appeal, the solicitor's office recasts the purpose as, just simply a container or a divided container purpose. The Patent Office has argued that that's really just an issue of semantics. It is not. There is a distinction between the two, and they are at very different levels of generality. And it is important to keep in mind that the analogous art doctrine teaches us that we should look only to references that are reasonably pertinent to the particular problem that the inventor was addressed to. And for example, in the wires case, the particular problem was defined very narrowly as preventing the ingress of contaminants into a locking mechanism. Same thing in ICON, which is the folding bed case, supporting the weight of a folding mechanism and providing a stable resting position. Not just mechanical devices, right? Not just containers. It's the particular problem that he was addressed to. The board correctly found it in its decision. And applying exactly that problem, the art is non-analogous. Any questions for Mr. Tompkins? Thank you, Mr. Tompkins. Mr. Case, let's take it under submission. All rise.